**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>CARL S. HURVITZ<br><br>Debtor | Chapter 7<br>Case No. 16-11844-MSH |

**MEMORANDUM OF DECISION ON THE MOTION OF**
**BLUE-GRACE FRANCHISE, LLC FOR RELIEF FROM THE AUTOMATIC STAY**

Before me is the Motion of Blue-Grace Franchise, LLC for Relief from the Automatic Stay [#15] to enforce certain noncompetition and nonsolicitation provisions of a franchise agreement entered into with the debtor, Carl S. Hurvitz. Mr. Hurtvitz opposes the granting of stay relief. The paramount question in determining whether to grant Blue-Grace's motion is whether its rights to enforce the noncompetition and nonsolicitation provisions qualify as claims under Bankruptcy Code § 101(5), (11 U.S.C. § 101, *et seq.*), rendering them dischargeable in this bankruptcy case. If they qualify as dischargeable claims, Blue-Grace's motion should be denied without prejudice until it is determined whether the claims are in fact discharged. If they do not qualify as claims, the motion may be considered on its merits. For the reasons discussed below, I find that Blue-Grace's rights to enforce the noncompetition and nonsolicitation provisions are not claims and that Blue-Grace's motion should be allowed.

**Background**

In February of 2015, Blue-Grace, a transportation logistics and technology company, entered into a franchise agreement with Mr. Hurvitz granting him a nonexclusive and limited license to use its technology and services. The franchise agreement contained a number of post-termination restrictive covenants including noncompetition and nonsolicitation provisions.

Section 9.2 of the franchise agreement prohibited Mr. Hurvitz from competing with or soliciting business away from Blue-Grace for two years after the termination of the agreement. The relevant provisions of the franchise agreement are as follows:

> Section 9.1(b) - Competitive Business Definition:
>
> (i) any business involved in providing freight, specialized freight and parcel transportation and shipping services or auditing services, or (ii) any business granting franchises or licenses to others to operate such a business.
>
> Section 9.2(a) - The Noncompetition Provision:
>
> Franchisee and its Owners agree and acknowledge that for an uninterrupted period of two (2) years after the later of: (a) the termination or expiration of the Franchise Agreement (regardless of the cause for termination or expiration); (b) the transfer of the Franchised Business; or (c) the date of a final non-appealable judgment or order of any court, arbitrator, panel of arbitrators or tribunal that enforces this Section 9.2, neither Franchisee nor any of its Owners will have any direct or indirect interest as an owner (whether of record, beneficially, or otherwise), investor, partner, director, officer, employee, consultant, representative or agent in any Competitive Business located or operating within the Continental United States.
>
> Section 9.2(b) - The Nonsolicitation Provision:
>
> Franchisee and its Owners agree and acknowledge that for an uninterrupted period of two (2) years after the later of: (a) the termination or expiration of the Franchise Agreement (regardless of the cause for termination or expiration); (b) the transfer of the Franchised Business; or (c) the date of a final non-appealable judgment or order of any court, arbitrator, panel of arbitrators or tribunal that enforces this Section 9.2 neither Franchisee nor any of its Owners will not [*sic*] directly or indirectly… solicit, contact…attempt to contact or meet with the Franchisor's, its Affiliate's or other franchisees of the Franchisor's current, former or prospective customers for purposes of offering or accepting goods or services similar to or competitive with those offered by the Franchisor.

On January 15, 2016, Blue-Grace terminated the franchise agreement due to Mr. Hurvitz's falling behind on payments. On April 11, 2016, after learning that Mr. Hurvitz had become an employee of Outsource, Inc. d/b/a the Freight Management Company, Blue-Grace filed suit in state superior court alleging that Mr. Hurvitz was in violation of his obligations

under the franchise agreement because Freight Management was its direct competitor and Mr. Hurvitz was soliciting away Blue-Grace's customers. On May 12, 2016, the superior court entered a temporary restraining order enjoining Mr. Hurvitz from, among other things, continuing his employment with Freight Management and from soliciting or attempting to contact Blue-Grace's current, former, or prospective customers.

On May 16, 2016, Mr. Hurvitz filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this court. Blue-Grace seeks relief from the automatic stay provisions of Bankruptcy Code § 362 to proceed with its superior court action on the basis that the noncompetition and nonsolicitation provisions are enforceable and the right to enforce them will survive Mr. Hurvitz's bankruptcy discharge. Mr. Hurvitz opposes the motion[1] on the grounds that the right to enforce the provisions meets the definition of a claim and is, therefore, subject to discharge.

**Discussion**

In the context of a motion for relief from the automatic stay to enforce a noncompetition agreement, bankruptcy courts focus on whether the enforcement right meets the definition of a "claim" and is therefore dischargeable. *See Matter of Forehand*, Case Number 15-41980, 2016 WL 637955, at *6 (Bankr. S.D. Ga. Feb. 12, 2016); *In re Hruby*, 512 B.R. 262, 267 (Bankr. D. Colo. 2014). Bankruptcy Code § 101(5)(B) defines a claim in relevant part as a:

> right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to

---

[1] "In a Chapter 7… case the debtor has standing to object to relief from the automatic stay only in relatively limited circumstances." *In re Moore*, 450 B.R. 849, 852 (Bankr. N.D. Ind. 2011) (citing *In re Radcliffe*, 372 B.R. 401, 412 (Bankr. N.D. Ind. 2007)). This is such a circumstance.

judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5)(B). Put another way, "[t]he right to equitable relief constitutes a claim only if it is an alternative to a right to payment or if compliance with the equitable order will itself require the payment of money." *Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493, 496 (6th Cir. 2001); *see also Matter of Udell*, 18 F.3d 403 (7th Cir. 1994). In *Matter of Udell*, the United States Court of Appeals for the Seventh Circuit held that the proper inquiry under Bankruptcy Code § 101(5)(B) is whether under applicable law a creditor's right to an injunction gives rise to an alternative or other corollary right to the payment of damages. *Udell*, 18 F.3d at 407.

"The majority of bankruptcy courts have held that the right to equitable relief for breach of a covenant not to compete [does not constitute a claim and is therefore] not dischargeable in bankruptcy." *Kennedy*, 267 F.3d at 496. It has been said, however, that "the law regarding noncompetition agreements [] is in 'disarray,' and whether such agreements are dischargeable claims in bankruptcy may depend on the specific language of the agreement." *In re Watman*, 331 B.R. 502, 511 (D. Mass. 2005) (citing *In re Ground Round*, Inc., 326 B.R. 23 (Bankr. D. Mass. 2005)), *aff'd*, 458 F.3d 26 (1st Cir. 2006). Case precedent within the First Circuit appears to be inconsistent. *Compare Sir Speedy, Inc v. Morse*, 256 B.R. 637 (D. Mass. 2000) *with In re Ward*, 194 B.R. 703, 704 (Bankr. D. Mass. 1996).

Here, neither the franchise agreement itself nor state law[2] provides for damages as an alternative to injunctive relief for noncompetition violations. Injunctive relief is typically

---

[2] While it appears from exhibits to the motion that Blue-Grace is proceeding in superior court under Massachusetts law, Section 23.3 of the franchise agreement provides that Florida law governs all disputes which arise from the contract. The parties appear to rely on Massachusetts law both in this case and in the state court action. Fortunately Florida law is consistent with Massachusetts law in this area. *See Miller Mech., Inc. v. Ruth*, 300 So.2d 11, 12 (Fla. 1974)

4

available only where the injury would be irreparable and a remedy at law is inadequate. *See Ward*, 194 B.R. at 711. Section 9.4 of the franchise agreement provides the following:

> Franchisee and its Owners acknowledge that any violation of the provisions of this Article IX would result in immediate and irreparable injury to Franchisor for which there is no adequate remedy at law. Accordingly, Franchisee and its Owners consent to the entry of an injunction without the need of a bond, prohibiting any conduct by Franchisee and its Owners in violation of the term of this Article IX[.]

Hence, the parties have effectively stipulated to the entry of injunctive relief and to the inadequacy of monetary damages in the event of a breach of the post-termination covenants,[3] including the noncompetition and nonsolicitation provisions of the franchise agreement.[4]

Section 14 of the franchise agreement details the franchisee's obligations on termination or expiration of the contract. Section 14.9(a) provides for liquidated damages for the loss of any future profits resulting from the early termination of the agreement.

> The parties recognize the difficulty of ascertaining damages to Franchisor resulting from the premature termination of this Agreement before its expiration. For this reason, Franchisor and Franchisee have provided for liquidated damages, representing Franchisor's and Franchisee's best estimate as to the damages arising from the circumstances in which they are provided and which are only damages for

---

(holding that a court may award damages for the breach of a noncompete agreement "but the normal remedy is to grant an injunction. This is so because of the inherently difficult, although not impossible, task of determining just what damage actually is caused by the employee's breach of the agreement."); *see also* Fla. Stat. § 542.335(j) ("The violation of a restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant.").

[3] Massachusetts courts have recognized and upheld stipulations of this nature. *Belkin v. Levenson*, No. 053287BLS, 2005 WL 2010340, at *4 (Mass. Super. Aug. 9, 2005), *on reconsideration*, No. 053287BLS, 2005 WL 2373850 (Mass. Super. Aug. 12, 2005) ("The foregoing language not only obviates the need for the ordinary irreparable damage analysis, it adds contractually binding provisions that this Court is not at liberty to change or ignore.").

[4] Section 9.4 also provides for the recovery of costs of litigation to enforce the noncompetition provisions. Any such right to payment of costs and expenses, however, is cumulative, and not alternative, to the right to injunctive relief. *See Udell*, 18 F.3d at 408-10.

5

> future profits lost to Franchisor due to the termination of this Agreement before its expiration, and not a penalty or as damages for breaching this agreement, or in lieu of any other payment or remedy.

Section 14.9(a) provides that liquidated damages represent damages exclusively for lost profits due to early termination of the agreement and not damages for breaching the agreement generally. As was the case in *Udell*, the liquidated damages provided by Section 14.9 are not meant to substitute for performance of the post-termination provisions found in Section 9 of the agreement. *Id.* at 408-10. Blue-Grace's right to liquidated damages is cumulative, not alternative, to its right to injunctive relief to enforce the noncompetition and nonsolicitation provisions of the agreement.

State law is no more helpful to Mr. Hurvitz than the franchise agreement. Under Massachusetts law, "injunctive relief is only appropriate when the plaintiff establishes that it has no adequate remedy at law and that it will suffer irreparable harm if an injunction is not granted." *Chiswick, Inc. v. Constas*, No. 200400311, 2004 WL 1895044, at *3 (Mass. Super. June 17, 2004) (citing *Packaging Industries Group v. Cheney*, 380 Mass. 609, 617 (1980)). In other words injunctive relief is available only when damages are not. *See Kennedy,* 267 F.3d at 498 ("It can only obtain equitable relief if money damages for future injuries are inadequate. Therefore, under Iowa law, equitable relief is not an alternative to a right to payment for future injuries."). Massachusetts courts have long recognized the difficulty of calculating damages and "the importance of injunctive relief in cases involving noncompetition agreements." *Gabriel Care, LLC v. Borden Care, LLC*, 89 Mass. App. Ct. 1112 (2016) (unpublished opinion) (internal quotations marks omitted); *see also Kroeger v. Stop & Shop Cos.,* 13 Mass. App. Ct. 310, 322, (1982) ("The task of quantifying the consequences of violating a noncompetition clause is a

6

particularly difficult and elusive one."); *Lufkin's Real Estate, Inc. v. Aseph*, 349 Mass. 343, 346 (1965); *McFarland v. Schneider*, No. CIV.A. 96-7097, 1998 WL 136133, at *48 (Mass. Super. Feb. 17, 1998).

Because neither the franchise agreement nor state law provides a right to payment as an alternative to injunctive relief, I find that Blue-Grace's rights to equitable relief to enforce the noncompetition and nonsolicitation provisions of the franchise agreement do not constitute claims within the meaning of Bankruptcy Code § 101(5).

Having determined that Blue-Grace's rights to enforce the noncompetition and nonsolicitation provisions of the franchise agreement are not claims subject to discharge in bankruptcy I turn to whether stay relief is appropriate at this time.

Under Bankruptcy Code § 362(d)(1), on request from a party in interest, a court shall grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). Whether cause exists is determined on a case-by-case basis. *In re Podmostka*, 527 B.R. 51, 54 (Bankr. D. Mass. 2015). A useful test to determine whether cause exists to lift the automatic stay to permit the continuation of pending litigation considers the following factors:

> (1) [whether] [a]ny "great prejudice" to either the bankrupt estate or the debtor will result from continuation of a civil suit;
>
> (2) [whether] the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor; and
>
> (3) [whether] the creditor has a probability of prevailing on the merits of his case.

*In re Haines*, 309 B.R. 668, 674 (Bankr. D. Mass. 2004) (citing *In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir. 1991)).

Blue-Grace has satisfied the *Haines* test. No prejudice will result to the bankruptcy estate if Blue-Grace is permitted to proceed to litigate the state court action against Mr. Hurvitz. By

7

virtue of obtaining its temporary restraining order Blue-Grace has already established a probability of success in that case as well as the existence of substantial harm to itself. It is true that Mr. Hurvitz will also suffer prejudice if Blue-Grace is granted stay relief. He points out that his fresh start, the *sine qua non* of the bankruptcy process, will be threatened. But since his undertaking not to compete with Blue-Grace will survive his bankruptcy discharge, Mr. Hurvitz faces this threat regardless. It is not granting stay relief that will harm Mr. Hurvitz, it is his promise not to compete with Blue-Grace.[5]

### Conclusion

For the foregoing reasons, Blue-Grace's motion for relief from the automatic stay will be granted. A separate order consistent with this memorandum shall issue.

July 20, 2016

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:

| David B. Madoff, Esq. | William A. Haddad, Esq. | David W. Lima, Esq |
| Madoff & Khoury LLP | Beck Reed Riden LLP | Southborough, MA for |
| Foxboro, MA for | Boston, MA for | Carl S. Hurvitz |
| Blue-Grace Franchise, LLC | Blue-Grace Franchise, LLC | |

---

[5] Sending the parties back to state court to litigate is hardly throwing Mr. Hurvitz to the wolves. Mr. Hurvitz will have the opportunity to raise all defenses and counterclaims available to him. *See All Stainless, Inc. v. Colby*, 364 Mass. 773, 778 (1974) ("If the covenant is too broad in time, in space or in any other respect, it will be enforced only to the extent that is reasonable and to the extent that it is severable for the purposes of enforcement.").